## In Re McGregor
## In Re Permission to Appropriate Waters
## of Martin Creek

No. 3119

September 3, 1935.                    48 P. (2d) 418.

*Gray Mashburn,* Attorney-General, and *W. T. Mathews* and *Julian Thruston,* Deputy Attorneys - General, for Appellant, State Engineer.

*McNamara & Robbins,* for Appellant, Harold Wm. Merritt.

*Milton B. Badt,* for Respondent, Frank McGregor.

## OPINION

By the Court, DUCKER, C. J.:

There is before us the motion of Frank McGregor, respondent, to dismiss the appeal and affirm the judgment in the above-entitled matter. The principal ground of the motion is that no transcript of the record on appeal has been filed with the clerk of this court within thirty days after the appeal was perfected, as required by rule 2 of the rules of the supreme court, or at all.

The motion came on for hearing in this court May 29, 1935, at 10 a. m. At that time counsel for Harold William Merritt, one of the appellants, appeared and presented a motion for an order of this court extending the time of the appellants to serve and file their transcript of the record on appeal from the judgment, to and including said 29th day of May. This motion was made on the ground of the excusable neglect of John E. Robbins, Esq., one of the attorneys for said appellant, in having failed to serve and file such a transcript in the time required by law, and was supported by his affidavit. The motions were heard together, and upon the submission thereof an order was made extending the time for filing the record on appeal until the decision was rendered on the respective motions.

As the appellants' default is conceded, the only question is whether the neglect in this respect is excusable. It appears that the appeal, which was taken from the judgment, was duly perfected on the 19th day of November, 1934. To comply with said rule 2 it was necessary to serve and file the transcript of the record on appeal within thirty days from said last-mentioned

date. It appears from the affidavit of Milton B. Badt, counsel for respondent, that from time to time appellants were given extensions of time to serve and file their proposed record on appeal up to and including March 18, 1935. On being given the last extension of time, counsel for said appellants was informed by letter from affiant that, unless they became active in the matter, he would move to dismiss; that since then no further extension has been given or requested, and no record on appeal has been served or filed.

On the hearing, counsel for appellant Merritt presented a proposed transcript of the record on appeal, which, under the direction of the court, was deposited with the clerk pending a decision on the motions.

The matters which are claimed to show a case of excusable neglect are set out in the affidavit of said attorney for appellant Merritt, and are substantially as follows: He agreed with the attorney-general and his deputies, attorneys for the state engineer, also an appellant, that he would prepare, serve, and file the record on appeal in the action, and that no fault in the matter rests upon said officials. From time to time prior to January 20, 1935, said attorney for respondent orally extended the time to complete the record on appeal. On January 21, 1935, affiant became a member of the legislature of the State of Nevada as state senator, and was in continuous attendance at the legislature from that date to and including March 30, 1935, and as such state senator was constantly occupied with the business of the state senate to the exclusion of outside matters, including many matters pending in his law office and practice, among which was the completion of this appeal. He intended to complete it and prosecute it to a final determination and has advised his client that his said appeal is well grounded in law. He believed he could obtain extensions of time from respondent's attorney for the asking, which belief was founded on the generous attitude of the latter in this respect in the past, and believed that if he had asked for a further extension it would

have been freely given and no motion to dismiss would have been made.

Respondent's attorney wrote a letter to affiant's address at Elko, Nevada, on or about March 8, 1935, extending the time to March 18, 1935, and mailed a copy of the letter to the office of the attorney-general. The letter was not forwarded to affiant or called to his attention until March 29, 1935, on or about which date notice thereof was conveyed to him in the senate chambers by the Honorable W. T. Mathews, Deputy Attorney-General. On affiant's return to Elko on March 31, 1935, after the adjournment of the legislature, he found his wife so seriously ill that it necessitated her removal to the Elko hospital, where she submitted to a major operation and was not permitted to leave until May 2, 1935. Since that time to the time of making the affidavit on May 28, 1935, his wife had been confined to her home under the constant care of a physician. The condition of his wife was such that affiant was required to be in constant attendance upon her to the neglect of his office, and in addition affiant was himself taken ill on April 25, 1935, and confined to his home under doctor's orders and call, to May 6, 1935. During the period from the adjournment of the legislature to and including May 15, 1935, the date of being served with a copy of the notice of motion to dismiss the appeal, he was unable, for the reasons stated, to properly consider many matters pending in his law office, including the preparation of the record on appeal in this case. His state of mind, coupled with his illness and the serious illness of his wife, caused him to neglect to ask respondent's counsel for additional time. At the time of making the affidavit he had completed the record on appeal and could serve and file the same without delay on any terms the supreme court saw fit to impose.

We have been somewhat in doubt as to whether the foregoing facts show such a case of excusable neglect as ought to invoke the exercise of the discretion of this court.

Appellants were in default after March 18. The attorney for the appellant Merritt had enjoyed the indulgence of respondent's counsel in the form of oral extensions for some time before, but this ought not to have lulled him into the belief that continued indulgence in that respect could be had for the asking. For some time prior to his being notified by the deputy attorney-general on March 29, 1935, of the letter of respondent's counsel that his time extended to March 18 had expired, he seems to have been unaware of the status of his appeal. So far as his affidavit discloses he did not know that his time had been extended at all from the extension he had been given before the last one contained in the letter, and he made no inquiries about it. After he ascertained that he was in default, in spite of his belief that he could obtain consideration from respondent's counsel, he made no effort to do so. This, he admits, was neglect, but claims it was excusable under the circumstances set forth in his affidavit. His showing of excusable neglect after the legislature adjourned and he returned to Elko on the 31st of March, 1935, on account of the prolonged sickness of his wife, and his own illness, is, we think, sufficient. The only thing which tends to rescue his conduct from inexcusable neglect before that time and after January 20, 1935, so far as his affidavit reveals, aside from the reliance he had on the indulgence of respondent's counsel, is his being occupied with the affairs of state. However, we are satisfied from the showing made that counsel desires in good faith to prosecute the appeal and have concluded to exercise our discretion in favor of a hearing on the merits. Appellant has not been in default for a great period of time, as was the case in Sullivan v. Nevada Industrial Commission, 54 Nev. 301, 14 P.(2d) 262, wherein two years had expired from the perfecting of the appeal from the judgment to the filing of the transcript of the record on appeal. Moreover, we have previously declared it is the policy of the law that cases should

be disposed of in this court on their merits whenever possible. Orleans Hornsilver Min. Co. v. Le Champ D'Or F. G. M. Co., 52 Nev. 92, 284 P. 307, 289 P. 805; Brockman v. Ullom, 53 Nev. 287, 299 P. 677.

Our authority for permitting a transcript of the record on appeal to be filed after the time specified in rule 2 is plainly conferred. It will be observed that in establishing it and rule 3 the court has reserved the exercise of discretion in enforcing the former. This is evident from the word "may" employed in the latter. Accordingly, the motion to dismiss the appeal and affirm the judgment is denied, and the motion for an extension of time is allowed. It is further ordered that appellant be given ten days after notice of this decision in which to serve and file the transcript of the record on appeal.

## ON THE MERITS

March 5, 1936.        55 P. (2d) 10.

*Gray Mashburn,* Attorney-General; *W. T. Mathews* and *W. Howard Gray,* Deputy Attorneys-General; and *McNamara & Robbins,* for Appellants:

*Milton B. Badt* and *Arthur McGregor,* for Respondent:

## OPINION

By the Court, DUCKER, C. J.:

This proceeding was instituted in the district court by respondent to have annulled and set aside an order of the state engineer made on the 25th day of June, 1934, canceling the former's application to that officer for permission to appropriate waters of Martin creek, in Elko County, Nevada.

The state engineer answered, and, upon the trial, Harold Wm. Merritt was, by order of the court, permitted to appear in said proceeding in support of the position of the state engineer as a person who may have been affected by the former's order or decision. Upon the conclusion of the proceeding, the court rendered judgment annulling and setting aside said order. The judgment also ordered and directed the state engineer forthwith to reinstate respondent's application with a priority as of date of November 1, 1933, and to proceed with the said application as amended or corrected in the manner required by law. The appeal was taken by both the state engineer and Harold Wm. Merritt, intervener.

The facts upon which the judgment was rendered are as follows: The application of respondent to appropriate 1,500 acre-feet of the public waters from Martin creek within the county of Elko, State of Nevada, was filed in the office of the state engineer at Carson City, Nevada, on the 1st day of November, 1933, by his agent, C. F. De Armond, and to which was assigned serial No. 9709. On the 20th day of April, 1934, the state engineer mailed at Carson City, Nevada, addressed to respondent in care of C. F. De Armond, at Elko, Nevada, by registered mail, the said application for correction, with the return date placed thereon by said state engineer, the same being the 20th

day of April, 1934, accompanied by advice of the reason for the return of the application, and therein giving additional information concerning the corrections he desired, and further informing applicant that the amended application and supporting map must be filed in his office on or before the 18th day of June (being 59 days from and after the 20th day of April, 1934), and said notice contained the further advice that, if the application, properly corrected, be returned within 60 days, the same would be refiled, retaining the priority of its original filing. This latter advice did not inform applicant whether the 60 - day period started running from the date of the mailing at Carson City, Nevada, on April 20, 1934, or the date of its receipt by applicant. The returned application and accompanying advice were actually received at Elko, Nevada, by registered mail, by one W. H. Settlemeyer, the partner or business associate of the said C. F. DeArmond, on the 24th day of April, 1934.

On June 18, 1934, the said C. F. De Armond, as the agent of respondent, deposited in the United States mail at Elko, Nevada, the amended application accompanied by a map, as required by the state engineer. The same was delivered to and filed in the office of the state engineer on the 20th day of June, 1934, 61 days from and after the 20th day of April, 1934, the date upon which the same was mailed at Carson City, Nevada, by the state engineer. Under date of June 25, 1934, the state engineer, by and through H. W. Reppert, assistant state engineer, by letter addressed to respondent in care of C. F. DeArmond, at Elko, Nevada, advised respondent as follows: "Your application No. 9709, which was filed with this office on November 1, 1933, has been cancelled by this office for the reason that the amended application, with supporting map, was not re-filed with this office within the statutory period of sixty days."

On the last-mentioned date the state engineer, in like manner, made a similar notation of cancelation upon the said original application and a similar record in the office of the state engineer. Under date of April 23,

1934, appellant Harold Wm. Merritt filed his application in the office of the state engineer for said waters of said Martin creek, and which application was assigned serial No. 9742.

Appellants assign as error misconstruction by the trial court of the provisions of section 7945 N. C. L., being section 60 of the water code; in annulling and setting aside the order of the state engineer. The section reads: "Upon receipt of an application, which shall be upon a blank form to be prescribed by the state engineer, and supplied the applicant without charge, it shall be the duty of the state engineer to make an endorsement thereon of the date of its receipt, and to keep a record of the same. If upon examination the application is found to be defective, it shall be returned for correction or completion with advice of the reasons therefor, and the date of the return thereof shall be endorsed upon the application and made a record of his office. No application shall lose its priority of filing on account of such defects; provided, the application, properly corrected and accompanied by such maps and drawings as may be required, is filed in the office of the state engineer within sixty (60) days from the date of said return to applicant. Any application returned for correction, or completion, not refiled in proper form within the said sixty days shall be canceled. All applications which shall comply with the provisions of the act shall be recorded in a suitable book kept for that purpose."

As noted in the foregoing statement of facts, respondent's amended application was filed 61 days after the return date endorsed on the application and 57 days after the defective application was received.

The question presented for determination is whether the time for filing an amended application begins to run from the return date endorsed on the application by the state engineer or from the date it is received by the applicant or his authorized agent. The court concluded that it begins to run from the date of receipt. Hence the judgment for respondent.

■ Respondent contends that the intention of the legislature that the time shall begin to run from the date of receipt is manifested by the word "return" employed in the section, which, it is argued, can be satisfied only by an actual, physical delivery of the defective application, accompanied by the advice mentioned in the section, to the applicant or his agent. In support of this argument we are referred to the definition of the word "return" as found in Webster's New International Dictionary as follows: "To bring, carry, put, or send, back."

We think the intention that the time for filing an amended application shall start to run from the date endorsed on the defective application, even though it is prior to the date of receipt, is plainly indicated by all the language of the section.

Let us requote a part thereof having an immediate bearing upon the question: "If upon examination the application is found to be defective, it shall be returned for correction or completion with the advice of the reason therefor, and the date of the return thereof shall be endorsed upon the application and made a record of his office."

Practical effect was given to this language by the method employed by the state engineer in delivering the defective application to respondent. The date was endorsed upon it, a record thereof made in his office, and the document at once started on the way to respondent through the United States mail, an agency reasonably adapted to bring it to him without delay. This method of delivery is not inhibited by the statute; it enables the state engineer to perform the duties of his office in a convenient, orderly, and reasonable manner; and it seems to be a logical deduction that it is within the scope of the statute.

On the contrary, to give to said word "return" the meaning of actual physical delivery to an applicant would involve a strained procedure in order to comply with the mandate that the date thereof be endorsed upon the defective application by the state engineer.

To do this it would be necessary to hand it to the applicant, perhaps, in a remote part of the state, at the same time endorsing the date of delivery upon it, or, to comply literally with the idea of a complete return, get the defective application back from him, make such endorsement, redeliver it, and thereafter make a record· of the transaction in the office of the state engineer. We are satisfied that no such procedure is contemplated by the statute, at least exclusively. The word "return" is to be harmonized with the other parts of the section.

■ It is a cardinal rule of construction that a statute should be construed so as to give effect, if possible, to all its parts. Garson v. Steamboat Canal Co., 43 Nev. 298, 185 P. 801, 1119. And to effect this it is often necessary to restrict or extend the ordinary and usual meaning of words. 59 C. J. 978.

We are referred to the cases of Harpending v. Haight, 39 Cal. 189, 2 Am. Rep. 432, and Tuttle v. City of Boston, 215 Mass. 57, 102 N. E. 350, for a construction of the word "return" in harmony with respondent's contention. These cases are not in point, because it is plain that the constitutions involved contemplated an actual physical delivery.

Respondent contends that the section is one providing for notice, and refers us to the rule stated in 20 R. C. L. 343. The statute is not of that character. It is itself notice to all applicants of how an application to appropriate the public waters of the state may be made effective.

■ Complaint is made of the state engineer having included in his advice the erroneous statement that the amended application and supporting map must be filed in his office on or before the 18th day of June, 1934 (being 59 days from and after the 20th day of April, 1934). It is not apparent how the respondent was misled by this statement, as he did not deposit his amended application in the post office at Elko, Nevada, addressed to the state engineer until June 18, 1934. The advice this officer is required to give does

not include informing an applicant of the time within which he may legally file an amended application.

The judgment should be reversed.

It is so ordered.